IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IVELISSE T. MARTINEZ SUAREZ<br><br>Plaintiff<br><br>V.<br><br>DIEGO R. ORTIZ ROSARIO; DO SOLUTIONS, LLC d/b/a "DOS CAPITAL"; JAVIER ANDRES CUEVAS NAZARIO; ZINNIA AYALA GONZALEZ; ABC INSURANCE COMPANY; JOHN DOE, AND JANE DOE;<br><br>Defendants | CIVIL NO.<br><br>SECURITES FRAUD;<br>BREACH OF CONTRACT;<br>TORT CLAIM UNDER; 31 L.P.R.A. §10801/10804/10805<br><br>TRIAL BY JURY DEMANDED |

## COMPLAINT

**APPEAR NOW** Plaintiff, through the undersigned attorney, and hereby state, allege and request as follows:

## INTRODUCTION

This case arises from the deceitful and wrongful conduct perpetrated by the Defendants in their dealings with the Plaintiff, Ivelisse T. Martinez Suarez, and other victims, primarily residents of Puerto Rico. As will be shown in greater detail henceforth, Ivelisse is a typical lay person, mother of two, who at all times relevant to this action, was looking for real opportunities to create more wealth for herself and her family.

On or about April of 2022, the defendants, altogether deceived, misled, tricked and induced Ivelisse to purchase their supposed investment plans within their online platform called "DOS Capital" with the direct, expressed, textual and verbal representations, that the monies invested would produce guaranteed returns of one-hundred thirty percent (130%) of the initial investment.

1

As will be better explained in the facts surrounding this action, Diego Ortiz Rosario ("Mr. Ortiz") the mastermind of this scheme, and defendants altogether, portrayed as if they had a safe product shielded from any risks, other than, gaining remarkable returns. Moreover, at all times mentioned, Mr. Ortiz represented himself as licensed financial advisor and/or investment broker capable of producing the vast amount of returns as portrayed through his online portal, Dos Capital, to purchase the different investment plans available.

Finally, it will be shown that all of this was none other than an interrelated traditional Ponzi and pyramid scheme created by the mastermind, Mr. Ortiz, in which, he used the monies from new members for; his family, own benefit, pay returns to others and incentivize already members who brought new participants to invest, like Ivelisse herein.

## JURISDICTIONAL BASIS AND VENUE:

1. This Court has federal question jurisdiction pursuant to 15 U.S.C 78aa of the "Securities Exchange Act of 1934") and 28 U.S.C. §1331. In addition, this Court has original jurisdiction pursuant to 17 CFR § 240.10b-5 as it is affirmatively alleged that Plaintiffs purchased a security as defined by the SEC. Collectively, as per section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and its companion SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, this Court has original jurisdiction.

2. Also, the diversity jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Section 1332 (a) (l), and Article III of the Constitution of the United States, inasmuch as this is a civil action that involves an amount in controversy in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and every issue of law and fact alleged herein is wholly between citizens of different states.

3. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) since all named defendants reside in this district and a substantial part of the events or omissions giving rise to this claim occurred in this district.

## THE PARTIES

4. Plaintiff **IVELISSE T. MARTINEZ SUAREZ** (hereinafter referred to as "**PLAINTIFF**" or "**IVELISSE**") is of legal age, a citizen of United States, domiciled and resident in the state of Florida. in 22 Fairview St., Keene, New Hampshire, U.S.A 03431.

5. Defendant **DIEGO R. ORTIZ ROSARIO (**hereinafter referred to as **"DEFENDANT" or Mr. Ortiz")** is of legal age, a citizen of the United States, domiciled and resident in the state of Puerto Rico, who at times mentioned is affirmatively alleged was the mastermind behind the deceitful scheme to defraud the investors, including Plaintiff, through his website called DOS Capital. His last known address is: Estancias de la Fuente, Girasol Street #112, Toa Alta, Puerto Rico, 00953.

6. Defendant **DO SOLUTIONS, LLC d/b/a/ "DOS Capital", (**hereinafter referred to as "**DOS Capital**") is a corporation organized and incorporated under the laws of Puerto Rico, who at all relevant times, by information or belief, was used as a strategy to operate the website Dos Capital, but never actually did. The corporation was solely owned by defendant, DIEGO ORTIZ and was duly canceled by the Department of State of Puerto Rico on October 31st, 2023, for not complying to file annual reports and annual fees for all the years since its inception: 2018, 2019, 2020, 2021 and 2022. The entity in question is included, out of abundance of caution, and to accumulate any party of interest. Notwithstanding, as of this date such entity has been duly canceled by the Commonwealth of Puerto Rico. By information or

belief their only mentioned address is current address is PO Box 366872, SAN JUAN, PR, 00936-6872.

7. Defendant **JAVIER ANDRES CUEVAS NAZARIO**, **(**hereinafter referred to as **"co-DEFENDANT" or "Javier")** is of legal age, a citizen of the United States, domiciled and resident in the state of Puerto Rico, who at all times mentioned it is affirmatively alleged was a member and coconspirator, accomplice, partner, assistant and/or abettor who induced, persuaded customers to become part of the deceitful scheme to defraud them, including Plaintiff. His last known address is: Urb. Encantada, Trujillo Alto PR, 00976.

8. Defendant **ZINNIA AYALA GONZALEZ**, **(**hereinafter referred to as **"co-DEFENDANT" or "ZINNIA")** is of legal age, a citizen of the United States, domiciled and resident in the state of Puerto Rico, who at all times mentioned it is affirmatively alleged is married to Mr. Ortiz with valid prenuptial agreement, who was a member and coconspirator, accomplice, partner, assistant and/or abettor who participated, controlled, used and benefited from the monies appropriated from the unsuspecting investors, such as Ivelisse. Her last known address is: Estancias de la Fuente Girasol Street #112, Toa Alta, Puerto Rico, 00953.

9. Defendant **ABC INSURANCE COMPANY** is an insurance company organized, existing, and with its principal place of business in Puerto Rico which issued an insurance policy(cies) on behalf of any or all defendants to cover their responsibilities arising from acts and/or omissions such as those described herein. By virtue of said insurance policy (ies) Insurance Company ABC is therefore responsible towards plaintiff for the acts and or omissions amounting to negligence for which plaintiff herein claims.

10. Defendant **JOHN DOE** and **JANE DOE** are those other natural persons or legal persons, which could be responsible to the plaintiffs for the acts or omissions subsequently described

herein and whose real names are currently unknown at this time, but which are jointly and severally liable to plaintiffs in this case.

## FACTUAL ALLEGATIONS:

11. All the allegations contained above are restated herein in full.

12. On or about November 1, 2021, Mr. Ortiz designed, codified, created and founded the website: https://doscapital.io/login "DOS Capital" as the platform he would use to deceive, persuade and convince unsuspecting participants to purchase his investment products using as a hook the apparent sizable returns and/or guaranteed return of investments.

13. The website, DOS Capital was formally launched online by Mr. Ortiz on or about March 1, 2022.

14. Participants, such as Plaintiff, were promised that purchasing any of the offered investment plans portrayed on the website was a risk-free proposition, and that their cash purchases would be repaid in full upon demand, in addition, to the guaranteed returns.

15. The investment contract and/or scheme consisted of participants subscription to the website, setting an account, and purchasing any of the three products listed by defendants through the placing of capital or laying out of money in a way intended to secure income or profit from its employment.

16. In this scheme, at all times mentioned, the participants were led to invest money in a common enterprise (Dos Capital) with the expectation that they would earn a profit solely through the efforts of the promoter, Mr. Ortiz and his co-conspirators, or of someone other than themselves.

17. In other words, as part of this scheme, the participants, like Ivelisse, provided the capital through the purchase of any of the listed investment plans and then, the defendants managed,

controlled and operated the enterprise, pretextually denominated as Dos Capital through the website platform.

18. Less than one month after the online portal was formally launched, Ivelisse, as well as many other unsuspecting investors, were approached by Javier and/or the defendants collectively to persuade them about this supposed second-to-none, one in a lifetime investment product.

19. At all relevant times, it is believed, Javier was acting as an abettor, associate and/or coconspirator of the mastermind, Mr. Ortiz, to induce new naïve participants to invest in this seemingly amazing product being promoted through the website.

20. By information or belief, the economic guarantees were based upon the defendants purported performance experience, financial connections, and ability to pool large amounts of money and expertise in the financial markets. Mr. Ortiz marketed himself as the "cryptosensei."

21. For every new participant Javier persuaded to subscribe and purchase any of the investment products, he would receive a commission, compensation, bonus and/or incentive (hereinafter, "reward").

22. Moreover, Javier would keep receiving rewards for, as defined, "three-generations" of members. For example, considering Javier brought in Ivelisse, then, if Ivelisse brought a new member, and that Member brought another new participant as well, then Javier would be rewarded for Ivelisse and the new member altogether on a monthly basis.

23. At all relevant times, this is known as the pyramid scheme perpetrated by the defendants.

24. Javier met with Ivelisse a couple of times. By information or belief Javier is a computer programmer and tech savvy. He explained how the investment plans purchase worked. He explained how the website and the returns worked. Javier used as examples his own apparent "legitimate" returns he, himself, was acquiring from purchasing the product. This was the final

hook which convinced Ivelisse to purchase the product: seeing the actual returns. There was no risk at all.

25. As expressed by Javier and the defendants, in order to subscribe to the online platform, she was instructed to open a Coinbase account. At that moment in time, Ivelisse didn't have any clue what a Coinbase account was and/or what a cryptocurrency or crypto market was.

26. After the Coinbase account was opened, she was instructed to share the credentials with the defendants to link her Coinbase account to the portal of Dos Capital. From there on, Ivelisse would transfer her money to the portal and decide which investment plan to purchase.

27. Once she selected the desired product, the defendants would take over the control and management of everything.

28. The product consisted of three investment plans to choose from:

    a. Pre-Launch Protocol – Term of 30 days. Minimum investment of $1,000.00 and returns of 130% at the end of the term.

    b. 4 MONTHS PLAN – Term of 120 days. Minimum investment of $1,000.00 and returns of 220% at the end of the term.

    c. YEARLY PLAN – Term of 365 days. Minimum investment of $1,000.00 and returns of 465% at the end of the term.

29. Based on the above representations by Javier and Mr. Ortiz, Ivelisse purchased the plan of thirty (30) days, with a guaranteed return of 130% percent. Once the product expired, she had the choice to take the profits or repurchase it, pressing the option "invest & earn".

30. Once the option "invest & earn" was selected, once again, the defendants would take over to complete the process. She purchased the 30-day plan for three (3) months between April, May, and June of 2022. Her purchases were the following:

    a. $1,056.50 purchased on April 7, 2022, coming to term on May 7, 2022.

    b. $1,083.55 purchased on April 20, 2022, coming to term on May 20, 2022.

    c. $75,015.00 purchased on May 19, 2022, coming to term on June 18, 2022.

    d. $529.99 purchased on May 22, 2022, coming to term on June 21, 2022.

    e. $24,019 purchased on June 03, 2022, coming to term on July 3, 2022.

    f. $1,841 purchased on June 4, 2022, coming to term on July 4, 2022.

31. In all, Ivelisse invested $103,545.16 of her own money to purchase the 30-day investment plans aforementioned in a span of 3 months.

32. By information or belief, unbeknownst and unaware to Plaintiff, Mr. Ortiz, would take all the monies invested by clients, including Ivelisse's, and transfer it to personal *hard digital wallets*[1] and perform different transactions. Moreover, it is affirmatively alleged that Mr. Ortiz would use his personal hard digital wallets with the monies of other unsuspecting victims, including Ivelisse, for his own benefit and disposition of the money.

33. In addition, it is affirmatively alleged that the only person, besides Mr. Ortiz, who had access to the hard digital wallets was his wife and codefendant, Zinnia. It is alleged that Zinnia benefited, was an accomplice, assisted and collaborated in this grand scheme using for her personal gain and benefit the monies from investor such as Ivelisse's.

34. At all times mentioned, the product never specified what type of product, bond, stock, fund, or else the money was going to be invested, in order to produce the represented guaranteed and/or sizable returns.

35. Ivelisse was fully unaware that Mr. Ortiz and the defendants collectively were investing in the highly volatile and speculative market of cryptocurrencies with her own money.

---

[1] similar in appearance to what a typical USB is to store files but to store and trade cryptocurrencies.

36. Despite the representations, defendants knew the falsehood and deception of their product. The website was only a pretext to run their fraudulent enterprise to acquire monies from new clients. This is where the ponzi scheme emanated from. When Mr. Ortiz received new monies from investors who purchased his product, like Plaintiff, it is affirmatively alleged he would then use that money to pay the alleged returns to earlier investors, give rewards to his coconspirators to keep the pyramid scheme working and any remaining funds to invest in personal cryptocurrencies.

37. From the moment Ivelisse purchased the security (30-day investment plan) everything was according to the representations made by the defendants. She could access her account on the website and see the apparent returns already made.

38. As mentioned before, Ivelisse decided to purchase the 30 days return product six times between April and May of 2022. That was her idea: to keep purchasing the 30 days return product called the *"Pre Launch Protocol"* for as long as possible and, when she achieved her desired gains, then, she would take the profits.

39. At one moment in time, she could see from the screens, returns as large as $177,819.56 combining the profits and invested monies.

40. As previously stated, after the product expired the platform allowed the investor, in this case, Ivelisse, what to do with the returns: 1) rebuy the product or any of the others offered or 2) take the money with the gained profits ending the contractual investment relationship.

41. At all times mentioned, the defendants had full control of the money invested. Plaintiff could only, in appearance, decide what to do with the money when the purchased product expired.

42. When Ivelisse saw the huge returns summing up to $177,819.56, she sought the help of Javier, being tech savvy, to assist her retrieve all of the money back to her personal account. Since

they were in different states, Javier instructed the Plaintiff to download a program so he could access remotely Plaintiffs computer to help her.

43. To her surprise, rather than help Ivelisse retrieve her money, Javier unilaterally and without Plaintiff's consent repurchased the 30-day investment product.  Ivelisse in complete shock asked Javier to undo what he had done, but Javier told her that nothing could be done but wait until the term expired again to retrieve the money.

44. However, that moment never materialized because at some point at the end of July of 2022, all of a sudden, without prior notice, the actual online portal, Dos Capital, where all the investors could purchase, oversee and follow the progress of their investments, disappeared; vanished.

45. That's the first time, Ivelisse, learned that apparently what the defendants were actually doing was taking the investors monies and buying cryptocurrencies in expectance of large returns.

46. Despite her intentions to retrieve her monies, the website did not allow her to do it. Once you clicked on the website, the only thing that appeared was the following:


(space left blank intentionally)



47. At some point during that commotion, where, obviously, all investors including Ivelisse needed answers as to what happened to the website and their monies, Mr. Ortiz, explained to them as part of the group chat in the Discord application, that the crypto market had crashed, and they needed some time to recover.

48. At all relevant times, Ivelisse could not retrieve her money. She could not retrieve the original investment, nor any of the proffered profits gained as seen on the website.

11

49. At all relevant times Mr. Ortiz and/or Javier are not registered licensed financial brokers, advisors or with any license to manage the monies of others. The defendants don't have any license to operate, manage or control the monies of third parties like the Plaintiff herein.

50. At all times mentioned Mr. Ortiz, through the employment of his website, operated, administered, maintained and controlled the influxes of monies deposited by Plaintiff in the account set within the website DOS CAPITAL.

51. Therefore, it is affirmatively alleged that Mr. Ortiz, Javier, (collectively the "defendants") defrauded the plaintiff through the employment of the website to sell securities with false representations of guaranteed fast returns and no risks, in which ultimately provoked economic losses.

52. No warnings, representations, or else were made by defendants to Plaintiffs as to any risks associated with the purchase of the products.

53. In fact, other than the agreement consisting of subscribing, opening an account and purchasing any of the offered investment plans, no written contractual agreement was ever signed before the Plaintiff purchasing the product and allowing the defendants to manage, control and operate the funds as they saw fit.

54. Because of the defendant's material misrepresentations of supposed guaranteed and/or sizable returns, Ivelisse never suspected any danger and/or risks to retrieve her original investment and its profits.

55. For all the foregoing reasons, the defendants are jointly and/or severally responsible for the damages sustained by the Plaintiff.

**FIRST CAUSE OF ACTION**
*Securities Fraud in Violation of 15 U.S.C. 78(j)(b) and 17 C.F.R. 240.10b-5*
*(Against All Defendants)*

56. All the allegations contained above are restated herein in full.

57. Section 3(a)(10) of the Securities Exchange Act of 1934 lays out what constitutes a "security." 15 U.S.C. § 78c(a)(10). As relevant here, the lengthy list of qualifying financial instruments includes "any note, stock, bond, preorganization certificate or subscription, investment contract… or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing…"

58. Section 10(b) of the Securities Exchange Act forbids (1) the "use or employ[ment] ... of any ... deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations." 15 U.S.C. § 78j(b).

59. Rule10b-5 forbids, among other things, the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made ... not misleading." 17 CFR § 240.10b–5 (2004).

60. Moreover, Rule 10b-5, which was promulgated by the SEC to implement Section 10(b), makes it unlawful for anyone engaged in the purchase or sale of a security to:

   a. employ any device, scheme, or artifice to defraud,

   b. make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

   c. engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]

17 C.F.R. 240.10b-5.

61. A securities fraud claim must plead the following six (6) elements: (1) a material misrepresentation or omission; (2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.

62. Here all the elements for this cause of action are met.

63. The defendants solicited Ivelisse to purchase the products listed on their website DOS CAPITAL.

64. In return for such investment purchase, the defendants offered Ivelisse returns of 130% per cent of her original investment.

65. At all times mentioned, Ivelisse relied on Mr. Ortiz, Javier and collectively, the defendant's false representations about the material terms of the purchased financial product to invest $103,545.16.

66. Defendants' representations were false, at which point, to this day defendants have not returned the original investment, nor any of the apparent guaranteed profits reflected in the portal.

67. Mr. Ortiz and Javier falsely represented that after 30 days of the product, Ivelisse would be able to retrieve all the monies invested including profits.

68. The defendants made these false representations with scienter, that is to say, for the purpose of obtaining Ivelisse's investment and with the only intent to benefit themselves unilaterally without ever having the intent to pay back the represented guaranteed returns and/or the original investment.

69. Ivelisse reasonably relied on the proffered representations made by Javier and Mr. Ortiz themselves and through their online portal, Dos Capital, to invest with no risks associated with the purchase of the product.

70. Ivelisse would not have purchased the investment product, but for defendant's misrepresentations regarding the product, including their representation of risk-free investment, sizable apparent returns and guaranteed returns.

71. Pursuant to the foregoing articles and caselaw, defendants respond jointly and severally for the damages related herein due to their negligent and culpable actions and omissions, and/or negligent actions and omissions of their employees, agents, representatives or contractors.

72. As a direct and proximate result of defendant's material misrepresentations regarding the investment plans, Ivelisse has suffered damages, in an amount to be determined or proven at trial, but including and not limited to the following: a) her $103,545.16 investment; and b) her returns as reflected to be of $177,819.56.

73. The Defendants, through their acts or omissions, caused damage to Plaintiff through fault or negligence in violation of 31 L.P.R.A. §5141 and/or 31 L.P.R.A §5142.

74. Pursuant to the foregoing articles and caselaw, defendants respond jointly and severally for the damages related herein due to their negligent and culpable actions and omissions, and/or negligent actions and omissions of their employees, agents, representatives or contractors.

**SECOND CAUSE OF ACTION**
*Breach of Contract Pursuant to*
*Articles 1073, 1158, 1167 and 1168 of the Puerto Rico Civil Code of 2020*
*(Against all defendants)*

75. All of the allegations contained above are restated herein in full.

76. Ivelisse and Mr. Ortiz entered into an agreement whereby Ivelisse would purchase the desired Investment product in exchange for a sizable return of 130% of her original investment of $103,000.00.

77. Mr. Ortiz was contractually responsible for and obligated to deliver the original monies invested in the purchasing of the product along with its profits to Ivelisse.

78. Mr. Ortiz and all defendants failed to deliver Ivelisse, the original amount invested, and profits gained, thereby breaching the contract between the parties.

79. As a result, Ivelisse suffered damages in an amount to be proven at trial, but not less than $177,819.56.

## THIRD CAUSE OF ACTION
*Dolus/Fraud Pursuant to Article 1168 of the Puerto Rico Civil Code of 2020*
*(Against All Defendants)*

80. All of the allegations contained above are restated herein in full.

81. The defendants collectively made misrepresentations to Ivelisse concerning the validity of the investment plans.

82. These misrepresentations were material to the transaction that Mr. Ortiz and the defendants induced Ivelisse to enter onto.

83. These misrepresentations were made with the intent that Ivelisse act on them and transfer $103,000 thousand dollars to an online platform owned and controlled by Mr. Ortiz and/or defendants collectively.

84. As a result, Ivelisse has been damaged to an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
*Damages pursuant to Article 1536, 1539 and 1540 of the PR Civil Code of 2020*

85. All of the factual allegations contained above are restated herein in full.

86. Mr. Ortiz, Javier and all defendants acted with the intention to deceive Ivelisse to purchase a product, which, by all means, was a fraudulent scheme to use Ivelisse's money unilaterally for their own benefit. Never intending to return the money or any of the profits.

16

87. As a result, Ivelisse suffered emotional and economic damages causally connected to defendant's intentional acts, which will be proven at trial.

### FIFTH CAUSE OF ACTION
*Damages for Bad Faith Pursuant to Article 18 of the Puerto Rico Civil Code of 2020*

88. All of the allegations contained above are restated herein in full.

89. The Defendants acted in bad faith in obtaining Ivelisse's investment in Dos Capital portal.

90. The Defendants repeatedly and consistently have misrepresented to Ivelisse that she would receive her investment back but have refused directly and/or indirectly to provide such.

91. The Defendants have acted in bad faith for the purpose of obtaining benefits from Ivelisse, while denying benefits that were due to Ivelisse.

92. By reason of the foregoing, Ivelisse has been damaged to an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
*Punitive Damages Pursuant to Article of the Puerto Rico Civil Code of 2020*

93. All of the allegations contained above are restated herein in full.

94. The New Civil Code pursuant to 31 L.P.R.A. § 10803 (Art. 1538) provides specifically for the application of punitive damages given the factual allegations surrounding this case: fraudulent acts such as the ones described herein are typified as felonies in both federal and State Penal Code of Puerto Rico.

95. Plaintiff would show the Court and Jury that defendant's conduct, *I.e., illegal appropriation of monies, fraudulent scheme to defraud and take money from victims*, constituted, *inter alia*, a felony and criminal act, for the imposition of punitive damages as defined in Art. 1538.

96. Such punitive damages pursuant to Art. 1538 are double damages which should be no less than the amount to be proven at trial for compensatory damages.

17

## TRIAL BY JURY DEMANDED

97. Under Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury.

WHEREFORE, Plaintiff Fahad Ghaffar demands judgment as follows:

a) Awarding damages in an amount to be determined at trial but presently believed to exceed $177,819.00

b) Award punitive damage in amount equal to the compensatory damages aforementioned pursuant to Art. 1538 of the Puerto Rico Civil Code of 2020.

b) Awarding specific performance of the contract between Ivelisse and the Defendants, including but not limited to delivery of the original investment along with all the profits and features represented pursuant to Article 1073 of the Puerto Rico Civil Code of 2020.

c) Granting such other equitable or injunctive relief as may be appropriate under the circumstances.

d) Awarding plaintiff his costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees, and other costs, interest, and disbursements; and

e) Granting such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED.

In Guaynabo, Puerto Rico this 30th day of October 2024.

**HERNANDEZ-OHARRIZ & SANTIAGO, P.S.C.**
Centro Internacional de Mercadeo 1
100 Carr. 165, Suite 612
Guaynabo, PR 00968
Tel: (787) 378-5630
Fax: (787) 775-1672

By:    s/ Edgardo Hernández
**Edgardo José Hernández Ohárriz**
U.S.D.C. No. 229304
eho@hoslawfirm.com